1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11   WORKFLOW SOLUTIONS, LLC, dba   )   Civil No. 08-1880-IEG(LSP)
     WORKFLOWONE,                   )
12                                  )
                      Plaintiff,    )   ORDER TO RESPOND TO
13                                  )   PLAINTIFF'S EX PARTE
                                    )   APPLICATION
14   v.                             )
                                    )
15   GEORGE RIFFEL,                 )
                                    )
16                    Defendant.
     ────────────────────────────

17

18

19        On October 16, 2008, Plaintiff Workflow Solutions ("Plain-

20   tiff") filed an Ex Parte Application for An Order To, *inter alia*,

21   Expedite Discovery ("Ex Parte App.") On November 5 and 12, 2008, the

22   Court held a Status Conference and Settlement Conference in this

23   action.

24        The Court, having reviewed Plaintiff's Ex Parte App., and

25   GOOD  CAUSE  APPEARING,  HEREBY  ORDERS  Defendant  George  Riffel

26   ("Defendant") to respond in detail under penalty of perjury to each

27   contention alleged in Plaintiff's Ex Parte App.  Riffel's response

28   shall  be  annotated  to  all  documents,  including  e-mails,  which

1   substantiate his position.  Riffel's response shall be filed with

2   the Court and served on opposing counsel on or before <u>January 12,</u>

3   <u>2009</u>.  With regard to 4 (a)-(e) below, all documents responsive to

4   Plaintiff's requests shall be produced to the Court in unredacted

5   and unedited form.  Responses shall be filed and served to the

6   following:

7   1. <u>Pre-Settlement Improper Disclosures/Use of Confidential Informa-</u>

8   <u>tion</u>

9        1(a).  Plaintiff alleges that in April 2008, prior to the

10   settlement of the underlying case, Defendant disclosed the 7%

11   pricing discount he had offered on behalf of Defendant to Brookstone

12   "2 weeks before (he was) downsized."  Defendant then incorporated

13   the same 7% discount in Smart Source's agreement with Brookstone,

14   which enabled Smart source to match Brookstone's pricing discount,

15   (Ex. G to Ex Parte App.)

16        1(b).  In April 2008, Defendant improperly obtained confiden-

17   tial information about Brookstone's on-going product orders from

18   Defendant's customer service representative Anna Ching ("Ching").

19   Defendant used that information as a basis for telling Scott Alton

20   ("Alton") to limit the orders from Defendant and reduce overall

21   product inventory with Defendant, which  thereafter Brookstone did.

22   (Ex. F to Ex Parte App.)

23        1(c).  In April 2008, Defendant disclosed confidential

24   information about Plaintiff's plans to move inventory to another

25   warehouse in a few days. Defendant then advised Alton to demand that

26   "all inventory stays put until Father's Day." (Ex. F to Ex Parte

27   App.)

28        1(d).  After the settlement of the underlying case Defendant

1    gave Alton confidential information about Plaintiff's pricing and

2    profit margins: "The bag and battery profits have traditionally

3    funded this program in the most part so losing margin here would

4    really hurt the health of the program." (Ex. H to Ex Parte App.)

5         1(e).   Defendant asked Alton to get him the user name and

6    password to access Plaintiff's confidential customer website. (Ex.

7    I to Ex Parte App.)

8    2. Targeting Plaintiff's Employees

9         2(a).   Defendant assured Alton that, as of May 22, 2008, "we

10   have everything lined up and ready to go, including support

11   personnel." (Ex. L to Ex Parte App.)

12        2(b).   On July 29, 2008, Ching announced her plan to resign

13   from Plaintiff, after receiving a telephone call from Alton.

14   (Declaration of Bob Abbonzio in support of Ex Parte App.) Until

15   Ching was on board at Smart Source, Defendant was expected to manage

16   the new Brookstone account.  (Ex. P to Ex Parte App.)

17        2(c).   Defendant called Defendant's Account Executive Dave

18   Hunt, told Hunt that the Brookstone account was moving to Smart

19   Source, and asked about Hunt's plans and options after a recent

20   change to Hunt's compensation plan at Plaintiff. Smart Source was

21   actively recruiting Hunt, who was Plaintiff's lead account executive

22   for Brookstone. (Declaration of Bob Abbonzio in support of Ex Parte

23   App.)

24   3. False, Misleading, Disparaging Statements about Plaintiff

25        3(a).    Defendant told Alton and Brookstone that Plaintiff

26   had decided to "exit the vertical retail market" business model and

27   revert to a "manufacturing mentality." (Ex. S to Ex Parte App.)

28   Defendant claimed that Plaintiff had terminated the employment of

1    nearly every employee who was part of the vertical retail market
2    team, beginning with himself. These statements were false. Plaintiff
3    terminated Defendant's employment because Defendant misappropriated
4    money through false business expenses. Plaintiff did not terminate
5    Ching's employment and did not terminate others identified by
6    Defendant.

7         3(b).   Prior to settlement of the underlying case, on
8    April 17, 2008, Defendant told Alton that Plaintiff had "down sized"
9    him.   Defendant did not tell Alton that his employment was termi-
10   nated due to Defendant's misappropriation of money through false
11   business expenses.

12        3(c).   On June 8, 2008, Defendant wrote to Alton and
13   reasserted that he was "down sized" by Plaintiff, and that "the
14   expense account was the vehicle they used as only an excuse." (Ex.
15   R to Ex Parte App.) Alton apparently had learned that Defendant had
16   misled him about the true reason for Defendant's termination from
17   Plaintiff.

18        3(d).   On June 8, 2008, Defendant told Alton that Plaintiff
19   would now "run the accounts until the profit margins suffer and they
20   completely abandon the vertical." (Ex. R to Ex Parte App.) This
21   statement was untrue.

22        3(e).   On July 24, 2008, after the settlement of the
23   underlying case, Defendant gave Alton "reasons to move" from
24   Brookstone:

25             1.   Defendant claimed a "change in Plaintiff's business
26   model from vendor neutral distribution model to manufacturing
27   mentality" and "loss of retail vertical market focus."

28             2.   Defendant claimed an unspecified "High level

1   management change and culture change."

2          3.    Defendant claimed "Recent price increases on
3   shopping bags" - which Alton recognized as "bum" information.
4   (Ex. S to Ex Parte App.)

5       3(f).      On August 10, 2008, Defendant prepared talking
6   points for Smart Source's meeting with Brookstone after Brookstone
7   apparently began to question whether Defendant and Alton had worked
8   out an "inappropriate" deal.

9          1.    Defendant claimed that "(Plaintiff) will try
10  anything to prevent the loss of the Brookstone account to SS or GR.
11  Even though they are for sale and exiting the retail vertical market
12  they will stop at nothing to prevent the account from joining SS."
13  (Ex. T to Ex Parte App.)

14         2.    Defendant claimed that the 7% discount Smart
15  Source gave Brookstone was "far more grater[sic] than what would
16  have occurred had they stayed with Plaintiff." In fact, Defendant
17  had offered the same 7% discount on behalf of Plaintiff two weeks
18  before Plaintiff terminated Defendant's employment. (Ex. F to Ex
19  Parte App.)

20         3.    Defendant claimed that Plaintiff would "institute
21  release charges, line item charges and storage charges soon," when
22  his interference with the Brookstone account, causing a huge loss,
23  is what led to the need for such charges. (Ex. T to Ex Parte App.)

24         4.    Defendant claimed that "SS has hired the account
25  management team and a few members of the retail vertical market
26  team" In fact, Defendant had been trying to help Smart Source hire
27  these people, but did not succeed.

28         5.    Defendant claimed that "(Plaintiff) has terminated

all the members of the retail vertical market team except for one." In fact, Plaintiff had terminated Defendant.  Plaintiff did not terminated Ching's employment, nor Ed Violoria's employment.

4. <u>Selective Production and Withholding Records</u>

4.   When Plaintiff and Defendant tried to resolve the current dispute,  Defendant selectively produced some documentation that Plaintiff requested.

4(a).   Plaintiff refused to produce his complete business plan from March 2008.  (Ex. K to Ex Parte App.)

4(b).   Defendant had communications through other email addresses, but he did not produce any such communications. (Ex. V to Ex Parte App.)

4(c).   Defendant had communications using Yahoo! Messenger, but did not produce any such communications.  (Exs. W, L to Ex Parte App.)

4(d).   Defendant withheld 2 pages of unspecified information. (Ex. X to Ex Parte App.)

4(e).    Defendant withheld at least 55 pages of "intro letters," a "brochure," power point materials and other unspecified documents, which he apparently used in connection with a sales presentation to Plaintiff's customer, Perfumania. (Ex. Y to Ex Parte App.)

DATED:   December 19, 2008

_____
Hon. Leo S. Papas
U.S. Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

08CV1880